GORDON SILVER
GERALD M. GORDON, ESQ.
Nevada Bar No. 229
E-mail: ggordon@gordonsilver.com
TALITHA B. GRAY, ESQ.
Nevada Bar No. 9040
E-mail: tgray@gordonsilver.com
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Telephone: 702-796-5555
Facsimile: 702-369-2666
[Proposed] Counsel for TAWK Development, LLC

QUARLES & BRADY LLP
SUSAN G. BOSWELL, ESQ.
Nevada Bar No. 4539
E-mail: susan.boswell@quarles.com
One South Church Avenue, Suite 1700
Tucson, Arizona 85701
Telephone: 520-770-8713
Facsimile: 520-770-2222

PISANELLI BICE PLLC
3883 Howard Hughes Parkway, Ste. 800
Las Vegas, Nevada 89169
Telephone: 702-214-2100
Facsimile: 702-214-2101

Counsel for Aviva Real Estate Investors (Falcon Landing), LLC, a limited liability company, as successor in interest to Aviva Life and Annuity Company f/k/a Amerus Life Insurance Company

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>TAWK DEVELOPMENT, LLC,<br><br>Debtor. | Case No.: 11-10584-MKN<br><br>Chapter 11<br><br>**STIPULATION AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION** |

This <u>Stipulation Authorizing Use Of Cash Collateral And Granting Adequate Protection</u> (the "<u>Stipulation</u>") is made by and between TAWK Development, LLC, debtor and debtor-in-possession ("<u>Debtor</u>"), and Aviva Real Estate Investors (Falcon Landing), LLC, a limited liability company, as successor in interest to Aviva Life and Annuity Company f/k/a Amerus Life Insurance Company ("<u>Lender</u>," and together with Debtor, the "<u>Parties</u>"). Debtor and Lender hereby stipulate and agree to Debtor's use of Cash Collateral and Disputed Cash Collateral (as defined herein) on the terms and subject to the conditions contained herein. This Stipulation is made with respect to the following recitals:

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102578-001/1116831_2.doc

## RECITALS

1. **Petition Date.** Debtor filed its voluntary Chapter[1] 11 petition on January 14, 2011 (the "Petition Date"), thereby commencing the above-captioned bankruptcy case (the "Bankruptcy Case"), pending before the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court").

2. **Debtor-in-Possession.** Pursuant to Sections 1107 and 1108, Debtor has retained possession of its assets and is authorized, as debtor-in-possession, to continue the operation and management of its business.

3. **Jurisdiction.** The Bankruptcy Court's consideration of this Stipulation is a core proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A) and (M). The statutory predicates for the relief sought are Sections 361 and 363, Bankruptcy Rule 4001(b), and LR 4001.

4. **The Construction Loan.** On or about April 10, 2007, Debtor entered into a Construction Loan Agreement (as amended, supplemented, converted, or otherwise modified from time to time, the "Loan Agreement") with Lender, pursuant to which Lender made a loan in the original principal amount of $20 million (the "Loan"). On April 12, 2007, Debtor executed the Secured Promissory Note (as amended, supplemented, or otherwise modified from time to time, the "Note") in favor of Lender in the principal sum of $20 million, together with accruing interest. As of the Petition Date, Debtor's principal obligation outstanding under the Note was $19,935,848.74 on account of principal, and $755,768.04 on account of contract interest (these amounts, together with any accrued and unpaid default interest, fees, costs, and expenses authorized under the Note, the "Prepetition Secured Obligation"). The Parties reserve all rights to assert and object to all amounts included in the Prepetition Secured Debt that are not specifically enumerated in this Stipulation.

…

…

---

[1] Unless otherwise stated herein, all Chapter and Section references are to Title 11 of the U.S. Code (the "Bankruptcy Code"), all Bankruptcy Rule references are to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and all references to LR are to the Local Rules of Bankruptcy Practice for the U.S. District Court for the District of Nevada (the "Local Rules").

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102578-001/1116831_2.doc

2

5.   **The Security Agreements Relating to Debtor's Real and Personal Property.**

The Prepetition Secured Debt is secured in part by that certain Construction Deed of Trust, Security Agreement and Assignment of Rents made by Debtor in favor of Lender (as amended, supplemented, or otherwise modified from time to time, the "Deed of Trust"),[2] dated April 10, 2007 and recorded on April 12, 2007 in Book 20070412 as Document No. 0003485 of the Office of the County Recorder of Clark County, Nevada, thereby granting Lender, as more fully set forth in the Deed of Trust, a first lien upon the real property upon which the 198-unit apartment complex known and numbered as Falcon Landing, 5067 Madre Mesa Drive, Las Vegas is located, as well as all of the improvements constructed thereon (the "Property"). The real property and all improvements encumbered by the Deed of Trust shall be referred to herein as the "Encumbered Real Property."

The Prepetition Secured Debt is further secured by, among other things, that certain Assignment of Leases and Rents dated April 10, 2007 and recorded on April 12, 2007 in Book 20070412 as Document No. 0003486 of the Office of the County Recorder of Clark County, Nevada (as amended, supplemented, or otherwise modified from time to time, the "Assignment").

The Assignment provides, as more fully set forth therein, that Debtor absolutely and directly assigns,[3] bargains, sells, transfers, conveys, sets over, and delivers to Lender all of its

---

[2] The Construction Loan Agreement, the Note, the Deed of Trust, the Assignment, the Guarantees, and all amendments, supplements, or other modifications to the foregoing, as well as all additional documents pertaining thereto, shall be referred to herein as the "Loan Documents." True and correct copies of the Construction Loan Agreement, the Note, the Deed of Trust, the Escrow Security Agreement, the Assignment, the Collateral Assignment of Construction Contract and Permits and Contractor's Agreement and Consent to Assignment, the Collateral Assignment of Design Professional's Contract, Plans and Specifications and Tests and Design Professional's Agreement and Consent to Assignment, the Collateral Assignment of Engineer's Contract, Plans and Specifications and Tests and Engineer's Agreement and Consent to Assignment, the UCC-1 Financing Statement, the Loan Modification Agreement, the Modification of Construction Deed of Trust, Security Agreement and Assignment of Rents, and the Confirmation and Modification Agreement are attached hereto as Exhibits "1" to "12."

[3] The Assignment provides that it is a "direct, absolute and currently effective assignment and shall not constitute merely the granting of a lien, collateral assignment or a security interest or pledge for the purpose of securing the Indebtedness...." Debtor contends and reserves all right to assert that pursuant to Chapter 107A of the Nevada Revised Statutes, the alleged absolute assignment of all Leases and Rents (as defined herein) solely provides a security interest to Lender and not the enhanced rights that an absolute assignment would have compelled. Lender reserves all rights to challenge the application and interpretation of Chapter 107A of the Nevada Revised Statues.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102578-001/1116831_2.doc

3

rights under the: (i) leases, license agreements, and concession agreements set forth on the certified rent roll previously provided by Debtor to Lender, and (ii) all other leases, tenancies, rental agreements, license agreements, concession agreements, subleases, and guarantees of the performance or obligation of any tenants thereunder affecting the Property (collectively, the "Leases"), as well as all amendments, extensions, and renewals thereof, together with all rents, other income, or payments (the "Rents") that become due and owing under such Leases or on account of a use of the Property. In addition, the Deed of Trust grants Lender a first priority lien and security interest in all personal property owned by Debtor used or useful in the operation of the Property, all renewals or replacements of such personal property, and all proceeds thereof (collectively, the "Encumbered Personal Property," and together with the Encumbered Real Property, the "Collateral").

6. **Perfection Of Security Interest In Encumbered Personal Property; Reservation Of Rights With Respect To Cash And Cash Equivalents.** Lender has filed a financing statement with the Nevada Secretary of State. As a result, Lender asserts that the following represents Lender's cash collateral (as defined by Section 363): (i) Debtor's cash and cash equivalents located on Debtor's premises as of the Petition Date (the "Cash on Hand"); (ii) Debtor's bank accounts as of the Petition Date (the "Deposit Accounts"); and (iii) cash generated or received by Debtor from and after the Petition Date (the "Postpetition Cash," and together with Cash on Hand and Deposit Accounts, the "Debtor's Cash").

Debtor disputes Lender's claim to Debtor's Cash as cash collateral (as defined in Section 363) only as to: (1) the Postpetition Cash that does not constitute amounts paid as rents of the Property, as provided for in Section 552(b)(2), including, but not limited to credit card income, ATM income, vending machine income, and technology services income; (2) the Cash on Hand on the Petition Date; and (3) the cash held on the Petition Date in Debtor's accounts, including the following accounts held at City National Bank: (i) the TAWK operating account ending in xxxx 6769, (ii) the Falcon operating account ending in xxxx 6800, (iii) the Falcon revenue account ending in xxxx 6819, (iv) the Falcon credit card account ending in xxxx 6827; and (v) the Falcon ATM account ending in xxxx 6835 (collectively, the "Disputed Cash

4

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102578-001/1116831_2.doc

Collateral").[4]  However, with regard to Cash Collateral and Disputed Cash Collateral, Debtor preserves its right to seek the approval of the Bankruptcy Court to use all of the Cash Collateral and Disputed Cash Collateral, including, but not limited to on the basis of the equities of the Bankruptcy Case as provided for in Section 552(b)(2), and Lender preserves its right to object to the use of all of the Cash Collateral and Disputed Cash Collateral, regardless of the circumstances raised by Debtor.

7.  **Reservation of Rights.**  The Parties reserve any and all rights and remedies with respect to the Disputed Cash Collateral and Cash Collateral, as well as the valuation of the Collateral and nothing herein shall prejudice the rights of the Parties in the event this Stipulation is terminated for any reason whatsoever nor shall it prejudice the rights of the Parties with respect to any matters which remain in dispute notwithstanding the Parties' agreement pursuant to this Stipulation and entry of the Interim Order and/or Final Order (as defined herein).

8.  **Acknowledgements Regarding the Prepetition Secured Debt.**  Debtor acknowledges and agrees solely on its behalf and not on behalf of any third parties-in-interest, and subject to the Investigation and Challenge Period (as defined herein) and discussed in paragraph m of this Stipulation, that: (i) the liens granted pursuant to the Loan Documents are valid, enforceable, and duly-perfected first liens and security interest in the Collateral, <u>provided, however</u>, that Debtor does not admit that Lender has a perfected security interest in the Disputed Cash Collateral and all rights of Lender to assert an interest in the Disputed Cash Collateral and Debtor to dispute such asserted interest are hereby reserved.

9.  **Debtor's Need For Use of Disputed Cash Collateral and Cash Collateral.**  Debtor cannot meet its ongoing postpetition obligations unless it uses Disputed Cash Collateral and Cash Collateral.  The ability of Debtor to finance its operations requires the immediate use of Disputed Cash Collateral and Cash Collateral.  In the absence of such use, immediate and irreparable harm will result to Debtor, its estate, and its creditors, and the inability to use such Disputed Cash Collateral and Cash Collateral will render impossible an effective and orderly

---

[4] The term "Cash Collateral" shall mean and include all of Debtor's Cash that is not Disputed Cash Collateral.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102578-001/1116831_2.doc

5

reorganization of Debtor's business. In the absence of access to Disputed Cash Collateral and Cash Collateral, the continued operation of Debtor's business would not be possible. As such, subject to the terms of this Stipulation and the Bankruptcy Court's approval of this Stipulation, Lender consents to Debtor's use of both Disputed Cash Collateral and Cash Collateral on the terms and conditions set forth herein. The relief provided through the approval of this Stipulation is therefore necessary, essential, and appropriate for the continued operation of Debtor's business and the preservation of its estate.

10. **Effective Date.** This Stipulation shall be effective on an interim basis upon entry of the order (the "Interim Order") approving the Stipulation on an interim basis at the first hearing on Debtor's Emergency Motion For Interim Approval Of Stipulation Authorizing Use Of Cash Collateral By Debtor And Granting Adequate Protection And Scheduling A Final Hearing To Approve Stipulation Authorizing Use Of Cash Collateral By Debtor (the "Motion"). The Stipulation shall be effective on a final basis upon entry of the order (the "Final Order") approving the Motion at the final hearing on the Motion (the "Effective Date"). Except as otherwise provided herein, the terms of this Stipulation shall be valid and binding upon Debtor, all successors-in-interest to Debtor, all creditors of Debtor, any statutory committee appointed in the Bankruptcy Case (an "Official Committee"), any trustee appointed in the Bankruptcy Case, and all other parties-in-interest from and after the Petition Date.

NOW, THEREFORE, in consideration of the foregoing recitals, Debtor and Lender hereby stipulate and agree as follows:

## STIPULATION

a. **Consent to Use of Cash Collateral and Disputed Cash Collateral Through the Termination Date.** Lender hereby consents to Debtor's use of Cash Collateral and Disputed Cash Collateral from the date of the Interim Order approving the Stipulation on the terms and conditions set forth in this Stipulation to and through the date (the "Termination Date") that is the first to occur of: (i) ten (10) calendar days following notice to Debtor that an Event of Default (as defined below) has occurred and is otherwise continuing or otherwise unresolved for which

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102578-001/1116831_2.doc

6

notice is required to be given; (ii) an Event of Default (as defined herein) has occurred for which no notice is required to be given; or (iii) the effective date of a confirmed plan of reorganization.

      b.    **Postpetition Accounts.** Debtor shall collect all Cash Collateral and Disputed Cash Collateral generated by the Property. Unless and until new procedures are established pursuant to an order of the Bankruptcy Court, Debtor is authorized and directed to maintain its prepetition cash management system and bank account system in effect on the date of this Stipulation (the "Prepetition Accounts"). Debtor will maintain an accounting of the Disputed Cash Collateral. Notwithstanding that the Disputed Cash Collateral will continue to be maintained in the Prepetition Accounts and not segregated from the Cash Collateral, neither Debtor nor Lender shall be entitled to argue that because the Disputed Cash Collateral and the Cash Collateral are maintained in the same account that either has lost its character, and the rights of Debtor and Lender are reserved with respect to any claims to the Disputed Cash Collateral.

      c.    **Budget.** Debtor may use Cash Collateral and Disputed Cash Collateral collected from its operation of the Property to pay expenses related to the operation, preservation, and maintenance of the Property, including but not limited to wages and related expenses and benefits, utility charges, trade payables, insurance, governmental fees and taxes, maintenance capital expenditures, and Chapter 11 administrative and other related costs, fees, and expenses attendant thereto, expressly including quarterly fees required to be paid to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), in amounts not to exceed, except as otherwise provided herein, the line item expenses provided in the Budget (as defined herein) on a monthly calendar basis.

      As used herein, "Budget" shall mean the monthly itemized cash-based operating budgets for Debtor, the first of which is attached hereto as **Exhibit "A,"** together with any modifications, amendments, extensions, or supplements as approved by Debtor and Lender. Five (5) weeks prior to the termination of the current Budget, Debtor will provide Lender with a new Budget for the following four (4) month period. Notwithstanding the approval by Lender of

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102578-001/1116831_2.doc

7

Exhibit "A," Lender reserves the right to object to any further budgets even if such budgets contain the same operating expenses by line item as those in Exhibit "A."

In the event that Lender objects to the new Budget, within two (2) weeks of Lender's receipt of the new Budget, Lender shall provide Debtor with a written itemization of its objections to the Budget. Should Lender timely object to a new Budget, Lender and Debtor agree to use their best efforts to negotiate in good faith to reach a resolution as to the objectionable entries. If a consensual resolution cannot be reached prior to two (2) weeks before the end of the current Budget period, Lender hereby consents to an order shortening time for Debtor to bring a motion seeking authorization to use Cash Collateral and Disputed Cash Collateral to the Bankruptcy Court. If Lender does not timely object to the new Budget, it shall be deemed accepted by Lender.

Debtor's actual cumulative Total Operating Expenses (as defined in the Budget) may exceed the projected monthly Total Operating Expenses enumerated in the Budget by no more than ten percent (10%) for each month.

Cash Collateral and Disputed Cash Collateral may not be used to pay Debtor's duly-retained professionals' fees without prior written approval of Lender and/or entry of an order of the Bankruptcy Court. Debtor reserves all of its rights to seek to use Cash Collateral and Disputed Cash Collateral to pay Debtor's professionals' fees, and Lender reserves all rights to oppose such a request.

d. **Monthly Reporting.** Debtor shall provide Lender with monthly reports no later than ten (10) business days after the conclusion of the prior monthly period. In addition to copies of the Monthly Operating Reports that are filed in the Bankruptcy Case, monthly reports to Lender shall include a line item by line item comparison of: (i) budgeted to actual receipts of cash receipts; (ii) budgeted to actual payment of Approved Expenses for the prior period (the "Actual/Projected Report"); (iii) bank statements for all bank accounts maintained by Debtor; and (iv) to the extent currently received by Debtor from its bank in the normal course of its operations, copies of all checks and deposit information. Within five (5) business days of

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102578-001/1116831_2.doc

8

Lender's written request after its receipt of the Actual/Projected Report, Debtor shall provide Lender with copies of the requested invoices for Approved Expense during the month in which the Approved Expense is paid. To the extent the Approved Expenses are reoccurring expenses based upon contractual arrangements to which Debtor is a party, upon Lender's written request, Debtor shall promptly provide copies of such contracts to Lender. The first such report shall be provided on or before March 14, 2011 and shall cover the period of the Petition Date through February 28, 2011.

e. **Adequate Protection Payment.** As additional adequate protection of Lender's interests in the Collateral, and Debtor's use of such Collateral, commencing on April 14, 2011, and continuing on the first business day that is ten (10) business days following the end of each monthly period thereafter, as additional adequate protection of Lender's interests in the Collateral, and Debtor's use of such Collateral, Debtor shall pay to Lender a payment of $71,741.16 (the "Adequate Protection Payments").

The ultimate application of the Adequate Protection Payments to the Prepetition Secured Debt shall be determined by written agreement of the Parties and/or entry of a final order of the Bankruptcy Court. To the extent necessary and applicable, the automatic stay contained in Section 362 is hereby modified solely to the limited extent necessary to permit Lender to receive and apply the Adequate Protection Payments to the Prepetition Secured Debt described in this Stipulation.

f. **Carve Out.** Notwithstanding anything to the contrary herein, all Cash Collateral and Disputed Cash Collateral shall be subject to a carve out for: (a) the payment of all allowed and unpaid professional fees and disbursements of Debtor incurred from the Petition Date until the Termination Date in an aggregate amount not to exceed $100,000, to the extent that such fees and disbursements are allowed by the Bankruptcy Court, and regardless of whether they are allowed prior to or subsequent to such Termination Date; provided, however, subject to the Parties' respective reservations of rights set forth in this Stipulation, that such amounts shall not be used to pay any fees or disbursements of Debtor relating to any contested matter, dispute, or adversary proceeding seeking to challenge, invalidate, avoid, or frustrate the security interests or

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102578-001/1116831_2.doc

liens of Lender in and on the Collateral or the claims[5] asserted by Lender and any analysis, research, or investigation in furtherance thereof; and (b) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court. Subject to the terms of this Stipulation and the preservation of Lender's rights to object to any application of professional fees, as long as no Event of Default shall have occurred and be continuing, Debtor shall be permitted to pay all compensation and reimbursement of expenses, allowed and payable under Sections 330 and 331, and any amounts so paid shall not reduce the amount that may be incurred subsequent to an Event of Default having occurred and be continuing. Notwithstanding the foregoing, to the extent that the Bankruptcy Court determines that the Disputed Cash Collateral is not part of Lender's Cash Collateral, all allowed compensation and reimbursement of expenses allowed under Sections 330 and 331 shall be paid first from the Disputed Cash Collateral.

    g.    **Tax and Insurance Covenant.** Debtor shall pay all undisputed postpetition taxes when they come due in respect of the Property (including any and all property taxes, sales taxes, occupancy taxes, and any other taxes related to the operation of the Property), maintain insurance as required by the Loan Documents, and maintain the value of the Property consistent with the obligations set forth in the Loan Documents.

    h.    **Replacement Liens.** Notwithstanding anything in Section 552 to the contrary and except for causes of action under Chapter 5, in addition to its liens and security interests under the existing Loan Documents, Lender shall have and is hereby granted (effective and continuing without the necessity of the execution, filing, and/or recordation of mortgages, deeds of trust, security agreements, control agreements, pledge agreements, financing statement, or otherwise), a valid and perfected security interest and lien (the "Replacement Lien") in all of Debtor's now-owned or after-acquired real and personal property of all types (collectively, the "Replacement Collateral"), including, the Debtor-in-Possession Bank Accounts and the Deposit

---

[5] For the avoidance of doubt, subject to the other terms of this Stipulation, the inclusion of Lender's "claims" does not preclude the $100,000 carve out from being used to pay fees or disbursements relating to Debtor's defense of any motion seeking stay relief, confirmation of Debtor's plan of reorganization, and/or Debtor's reserved rights with regard to the Disputed Cash Collateral and those set forth in paragraph 4 of this Stipulation.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102578-001/1116831_2.doc

10

Accounts, with the exception of the Disputed Cash Collateral therein, and all replacements, supporting obligations, offspring, products, and proceeds of the existing Collateral and the Replacement Collateral to the same extent and priority as Lender's pre-petition security interest and liens. The Replacement Liens shall be evidenced by the existing Loan Documents and the Interim Order and the Final Order. Lender shall retain all of its existing liens and security interests in all of the Collateral, including, without limitation, the liens and security interests described above and any rights of setoff. The Replacement Liens shall be senior to all other security interests, liens, and rights of setoff.

The Replacement Liens in the Replacement Collateral granted hereby shall be valid, perfected, enforceable, and effective against Debtor and its successors and assigns, including any trustee or other receiver or custodian of the estate in this or any superseding Chapter 7 case, without any further action by Debtor or Lender and without the execution, delivery, filing, or recordation of any mortgages, deeds of trust, security agreements, control agreements, pledge agreements, financing statement, or otherwise. Debtor acknowledges that Lender may, but is not required to, file any financing statement to perfect the Replacement Liens granted herein. The automatic stay under Section 362 is hereby modified to permit Lender, in its sole discretion, to file the Interim Order, the Final Order, or any of the foregoing documents to give notice of such liens and security interests.

To the extent that the Bankruptcy Court subsequently finds and determines that the Replacement Lien granted to Lender in this Stipulation, the Interim Order, and/or the Final Order does not provide Lender with adequate protection against any diminution in the value of the Cash Collateral, Lender shall have a super-priority administrative expense claim (the "Super-Priority Claim") under Section 507(b) as necessary to compensate Lender for any diminution in the value of the Cash Collateral, subject only to: (i) the carve out set forth in paragraph f of this Stipulation; and (ii) solely to the extent that nonpayment thereof would give rise to personal liability of any member, manager, employee, or agent of Debtor for: (a) employee wages and related expenses and benefits including taxes and withholdings related thereto, and (b) taxes. Except in respect of the carve out set forth in paragraph f of this Stipulation, the Super-Priority

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102578-001/1116831_2.doc

Claim of Lender shall have priority over all administrative expenses of any kind incurred in the Bankruptcy Case, including such administrative expenses of the kinds specified in, or allowable under Sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b), or 726. No costs or expenses of administration which have been or may be incurred in these proceedings, any conversion of these proceedings pursuant to Section 1112, or in any other proceeding related hereto, and no priority claims are, or shall be, prior to or on a parity with the claim of Lender against Debtor, except in respect of the carve out.

      i.    **No Other Liens.** Except as otherwise agreed to in writing by Lender or otherwise ordered by the Bankruptcy Court, during the term of this Stipulation, Debtor shall be prohibited from granting any mortgages, security interests, or liens, including liens created under Section 364(d), which are senior to or on a parity with Lender's prepetition security interests or liens in the Collateral. For the avoidance of doubt, the prohibition in this paragraph shall not apply to the perfection of liens after the Petition Date that are excepted from the automatic stay pursuant to Sections 326(b) and 546(b) or as otherwise provided for in a confirmed plan of reorganization, provided, however, that nothing contained in this Stipulation shall be nor shall it be deemed to be consent by Lender to any further or additional mortgages, security interests, or liens of any kind.

      j.    **Other Liens.** Notwithstanding anything to the contrary herein, nothing in this Stipulation shall alter the priority of any lien or security interest granted to or claimed by: (i) any mechanics' lien claimants, provided that the validity, perfection, and priority of such lien or security interest is determined by court order in accordance with applicable law; (ii) any tax liens arising in favor of any applicable authority pursuant to NRS § 361.450, or other law in the applicable jurisdiction, to secure *ad valorem* real and personal property taxes assessed; or (iii) any liens arising in favor of any applicable authority pursuant to NRS § 318.192, or other law in the applicable jurisdiction, to secure water or sewer service, inspection, and/or related fees and nothing contained in this Stipulation shall affect the rights of Lender or Debtor to challenge any such liens or security interests.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102578-001/1116831_2.doc

12

k. **Events of Default.** Notwithstanding any other provision contained herein, the occurrence of any of the following events, unless waived in writing by Lender, shall constitute an "Event of Default" hereunder:

    i) Entry of an order by the Bankruptcy Court converting or dismissing the Bankruptcy Case;

    ii) Entry of an order by the Bankruptcy Court appointing a Chapter 11 trustee in the Bankruptcy Case;

    iii) Filing by Debtor of a motion or commencement of an action by Debtor challenging the extent, validity, or priority of Lender's liens or, subject to the Parties' respective reservation of rights set forth in this Stipulation, including, but not limited to its reserved rights with regard to the Disputed Cash Collateral, a motion or commencement of an action by Debtor challenging the extent, validity, or priority of Lender's claims.[6]

    iv) The filing of any motion by Debtor to obtain debtor-in-possession financing without Lender's consent;

    v) Noncompliance by Debtor with any of the express terms or provisions of this Stipulation, including, but not limited to, failure of Debtor to timely provide Lender with updated and additional Budgets; and

    vi) Debtor knowingly furnishes or knowingly makes a false, inaccurate, or materially incomplete representation, warranty, certificate, report, or summary in connection with or pursuant to this Stipulation.

l. **Remedies.** Except in the case of Events of Default in subparagraphs (i) through (iv) for which no prior notice from Lender shall be required, upon the occurrence of and continuation of any Event of Default enumerated in subparagraphs (v) through (vi) of paragraph k of this Stipulation, and following ten (10) calendar days' written notice by Lender to Debtor

---

[6] For the avoidance of doubt, subject to the other terms of this Stipulation, the inclusion of Lender's "claims" does not preclude Debtor's defense of any motion seeking stay relief, confirmation of Debtor's plan of reorganization, and/or Debtor's reserved rights with regard to the Disputed Cash Collateral and those set forth in paragraph 4 of this Stipulation.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102578-001/1116831_2.doc

13

(the "<u>Remedies Notice Period</u>"), Lender may terminate Debtor's authorization to use Cash Collateral and Disputed Cash Collateral. In the event of such notice, Lender consents to Debtor obtaining a hearing before the Bankruptcy Court upon shortened time within the Remedies Notice Period (or as soon as the matter can be heard by the Bankruptcy Court) to contest and dispute the extent of Cash Collateral and the right to seek authorization to use Cash Collateral and Disputed Cash Collateral. For the avoidance of doubt, the noticing of an Event of Default does not authorize Lender to take any other acts against Debtor as provided in the Loan Documents or applicable law without further order of the Bankruptcy Court nor does it allow Debtor to continue to use Cash Collateral and Disputed Cash Collateral pending a hearing and further order of the Bankruptcy Court.

      m.    **<u>Investigation and Challenge Period.</u>** Debtor shall have until the Effective Date to challenge the accuracy of any of the contentions contained in the Recitals of this Stipulation, and Debtor shall have thirty (30) days from the Effective Date to bring any avoidance claims under Sections 544, 545, 547, 548, and/or 550, and similar provisions of the Bankruptcy Code as to payments made Prepetition by Debtor to Lender. Other parties-in-interest shall have forty-five (45) days from the Effective Date, and any Official Committee (if appointed) shall have sixty (60) days from the entry of the order of appointment of the Official Committee to: (i) challenge the accuracy of any of the contentions contained in the Recitals of this Stipulation; or (ii) bring any avoidance claims under Sections 544, 545, 547, 548, 549, and/or 550, and similar provisions of the Bankruptcy Code as to Lender's liens, claims, and Collateral. The time periods set forth in this paragraph shall be referred to herein as the "<u>Investigation and Challenge Period</u>."

      If Debtor, an Official Committee, and/or any other party in interest does not challenge the accuracy of the contentions contained in the Recitals by the deadlines set forth in the foregoing paragraph, then, subject to the Parties' respective reservations of rights set forth in this Stipulation: (i) the Prepetition Secured Debt shall constitute allowed claims in the amount set forth in Recital 4 of this Stipulation for all purposes in the Bankruptcy Case and any subsequent Chapter 7 case; (ii) Lender's prepetition security interest and lien on the Collateral shall be deemed legal, valid, binding, perfected, and otherwise unavoidable to the extent permitted under

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102578-001/1116831_2.doc

14

applicable law; (iii) the Prepetition Secured Debt in the amounts set forth in Recital 4 of this Stipulation and Lender's prepetition security interest and lien on the Collateral shall not be subject to subordination, avoidance, or any other or further challenge by any party-in-interest seeking to exercise the rights of Debtor's estate, including, without limitation, any successor thereto; and (iv) as a result of the foregoing, the repayment of any postpetition non-default interest to Lender in accordance with the terms of this Stipulation shall constitute an indefeasible payment and shall be final and binding for all purposes.

For the avoidance of doubt, the foregoing provision does not: (i) limit or impair the right of Debtor to demand an accounting of all postpetition sums claimed due and owing by Lender; (ii) preclude Debtor from contesting the extent of Lender's lien on Postpetition Cash or Disputed Cash Collateral; (iii) preclude Debtor from seeking authorization from the Bankruptcy Court to use Cash Collateral and Disputed Cash Collateral in the event of the termination of this Stipulation or Lender's right to object to or defend against any contest or proposed use of Cash Collateral and Disputed Cash Collateral; (iv) preclude Debtor from seeking to cure and reinstate the Prepetition Secured Debt pursuant to Section 1124 or Lender from objecting to and defending against such cure and reinstatement; (v) bind any persons or entities, including the persons and entities having guaranteed the repayment of the Prepetition Secured Debt, in any proceeding other than the Bankruptcy Case; (vi) have any legal effect in any judicial, administrative, or other proceeding involving claims against an entity or person, including the persons and entities having guaranteed the repayment of the Prepetition Secured Debt, under any legal or equitable doctrine, principal, or theory, including but not limited to *res judicata*, collateral estoppel, waiver, or laches.

n. **No Waiver/Reservation of Rights.** Neither the entry of an order approving this Stipulation nor Lender's acceptance of the Adequate Protection Payments shall constitute, or be deemed to be, a waiver of any of Lender's rights or claims under the Loan Documents or applicable law, or a cure of any default by Debtor under the Loan Documents.

Except as otherwise set forth herein, both Lender and Debtor reserve all rights that each may have with respect to the Property, Cash Collateral, and Disputed Cash Collateral in

15

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102578-001/1116831_2.doc

this Bankruptcy Case. Lender expressly reserves all right to seek, and Debtor expressly reserves all rights to object to and oppose, relief from or modification of the automatic stay, appointment of a trustee, dismissal or conversion of the Bankruptcy Case, additional adequate protection payments or payments required under Section 362(d)(3), or any other remedies that it may have.

  o. **Modification and Amendment.** No waiver, modification, or amendment of any of the provisions hereof shall be effective unless it is set forth in writing, signed by the Parties hereto, and approved by the Bankruptcy Court, except Debtor shall have the right to: (i) use Cash Collateral and Disputed Cash Collateral for purposes not specified in the Budget as consented to by Lender in writing, and (ii) operate the Property pursuant to the terms of this Stipulation.

  p. **Survival.** The provisions of this Stipulation and any actions taken pursuant hereto shall survive entry of any order: (i) converting the Bankruptcy Case to a Chapter 7 case; or (ii) the appointment of a Chapter 11 trustee.

  Notwithstanding any stay, modification, vacation, or reversal of this Stipulation, any indebtedness, obligation, or liability incurred by Debtor pursuant to this Stipulation arising prior to the later of the effective date of such stay, modification, vacation, or reversal, or Lender's receipt of notice thereof, shall be governed in all respects by the original provisions of this Stipulation, and Lender shall continue to be entitled to all of the rights, remedies, privileges and benefits, including any payments authorized herein, with respect to all such indebtedness, obligations, or liabilities incurred or existing prior to such date, and with respect to Debtor's use of the Cash Collateral prior to such date.

  q. **Full Force and Effect of the Loan Documents.** Except as otherwise expressly provided in this Stipulation, the terms and conditions of the Loan Documents shall remain in full force and effect and Lender shall have all of its rights and remedies thereunder, subject to the provisions of Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any other applicable law, and any orders of the Bankruptcy Court.

  r. **Binding Nature.** Except as otherwise provided for herein, this Stipulation shall be binding upon and inure to the benefit of Lender, Debtor, and their respective successors and

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102578-001/1116831_2.doc

16

assigns, including any trustee or other fiduciary hereafter appointed in the Bankruptcy Case or in any superseding Chapter 7 case as a legal representative of Debtor or Debtor's estate.

    s.   **Good Faith and Reasonableness.** The adequate protection arrangements authorized hereunder have been negotiated in good faith and at arm's length, and the terms of such adequate protection arrangements are fair and reasonable under the circumstances and reflect Debtor's exercise of its prudent business judgment.

    t.   **Further Assurances.** The Parties hereby agree to execute all further documents and perform such further acts as may reasonably be required to effectuate the purpose and intent of this Stipulation.

    u.   **Headings.** Headings have been inserted in this Stipulation as a matter of convenience for reference only and it is agreed that such headings are not a part of this Stipulation and shall not be used in interpreting any provision of this Stipulation.

    v.   **Successor and Assigns.** Subject to paragraph m hereof, this Stipulation and any order entered authorizing and approving it, shall be binding upon and shall inure to the benefit of the Parties hereto and their respective heirs, executors, administrators, successors, and assigns. No rights are intended to be created hereunder for the benefit of any third party or creditor or any direct or indirect incidental beneficiary except as specifically provided herein.

    w.   **Notices.** All notices required to or permitted to be given to Debtor under this Stipulation shall be addressed as follows:

> To:    TAWK Development, LLC
> Attn: Michael S. Talbott
> 5067 Madre Mesa Dr., #2069
> Las Vegas, NV 89108
> Fax No.: 949-422-2084
> Email: mike@desertinntowers.com
>
> and
>
> Copy:  Gordon Silver
> Attn: Gerald M. Gordon, Esq.
> 3960 Howard Hughes Pkwy., 9th Floor
> Las Vegas, NV 89169
> Fax No.: 702-369-2666
> Email: ggordon@gordonsilver.com

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102578-001/1116831_2.doc

17

All notices required to or permitted to be given to Lender under this Stipulation shall be addressed as follows:

To:  Aviva Real Estate Investors (Falcon Landing), LLC
Attn: Loryssa Rippey
215 10th Street, Suite 1000
Des Moines, IA 50309
Fax No.:
Email: Loryssa.Rippey@avivainvestors.com

and

Copy:  Quarles & Brady LLP
Attn: Susan G. Boswell, Esq.
One South Church Avenue, Suite 1700
Tuscon, AZ 85701
Fax No.: 520-770-2222
Email: susan.boswell@quarles.com

The above addresses may be changed effective upon receipt of a new address. Any notice required herein or permitted to be given shall be in writing and be personally served or sent by facsimile (upon confirmation of receipt), electronic correspondence, or United States mail and shall be deemed given when sent or, if mailed, when deposited in the United States mail so long as it is properly addressed. All notices and reports required hereunder shall also be sent to counsel for any Official Committee.

x. **Retention of Jurisdiction.** The Bankruptcy Court shall retain exclusive jurisdiction over the subject matter of this Stipulation in order to resolve any dispute in connection with the rights and duties specified hereunder.

y. **Counterparts.** This Stipulation may be executed in original, .pdf, or facsimile signature and in counterpart copies, and this Stipulation shall be deemed fully executed and effective when all Parties have executed and possess a counterpart, even if no single counterpart contains all signatures.

IT IS SO STIPULATED.

[Signature page follows]

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102578-001/1116831_2.doc

18

| | | |
|---|---|---|
| 1 | | |
| 2 | DATED: January 17, 2010 | AVIVA REAL ESTATE INVESTORS (FALCON LANDING), LLC |
| 3 | | |
| 4 | | /s/ Loryssa Rippey |
| 5 | | By: Loryssa Rippey<br>Its: |
| 6 | | |
| 7 | DATED: January 17, 2010 | TAWK DEVELOPMENT, LLC |
| 8 | | /s/ Michael S. Talbott |
| 9 | | By: Michael S. Talbott<br>Its: Manager |

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102578-001/1116831_2.doc

19