GORDON SILVER
GERALD M. GORDON, ESQ.
Nevada Bar No. 229
E-mail: ggordon@gordonsilver.com
TALITHA B. GRAY, ESQ.
Nevada Bar No. 9040
E-mail: tgray@gordonsilver.com
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Telephone (702) 796-5555
Facsimile (702) 369-2666
[Proposed] Attorneys for TAWK Development, LLC

E-Filed On 1/17/11

### UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF NEVADA

| In re:<br><br>TAWK DEVELOPMENT, LLC,<br><br>Debtor. | Case No.: 11-10584-MKN<br>Chapter 11<br><br>Date: OST Pending<br>Time: OST Pending |
|---|---|

### EMERGENCY MOTION FOR INTERIM APPROVAL OF STIPULATION AUTHORIZING USE OF CASH COLLATERAL BY DEBTOR AND GRANTING ADEQUATE PROTECTION AND SCHEDULING A FINAL HEARING TO APPROVE STIPULATION AUTHORIZING USE OF CASH COLLATERAL BY DEBTOR

TAWK Development, LLC, by and through its proposed counsel, the law firm of Gordon Silver, hereby submits its Emergency Motion (the "Motion") for interim approval of the Stipulation Authorizing Use Of Cash Collateral And Granting Adequate Protection (the "Cash Collateral Stipulation") filed in conjunction herewith.[1]

This Motion is made and based on the points and authorities provided herein, the Omnibus Declaration Of Michael S. Talbott In Support Of Debtor's First Day Motions (the "Omnibus Declaration"), the papers and pleadings on file herein, judicial notice of which is respectfully requested, and any arguments of counsel entertained at any interim or final hearings on this matter.

. . .

. . .

---

[1] Terms not otherwise defined herein are as defined in the Cash Collateral Stipulation.

102578-002/1111475_2.doc

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

# I.
## CONCISE STATEMENT OF RELIEF REQUESTED

This concise statement of relief requested is made pursuant to Bankruptcy Rule[2] 4001(b)(1)(B)[3] This Motion seeks entry of the proposed <u>Order Granting Debtor's Emergency Motion For Interim Approval Of Stipulation Authorizing Use Of Cash Collateral By Debtor And Granting Adequate Protection And Scheduling A Final Hearing To Approve Stipulation Authorizing Use Of Cash Collateral By Debtor</u> (the "<u>Interim Cash Collateral Order</u>") attached hereto as <u>Exhibit "1"</u>, thereby approving on an emergency interim basis the Cash Collateral Stipulation pursuant to Bankruptcy Rule 4001(b) and LR 4001(b).[4] This Motion further requests that should an opposition be filed with regard to the granting of final relief, the Court schedule a final hearing for approval of the Cash Collateral Stipulation at least twenty-one (21) days hereafter. The Cash Collateral Stipulation allows for the use of both Cash Collateral and Disputed Cash Collateral in accordance with the Budget attached to the Cash Collateral Stipulation, while preserving Debtor and Aviva Real Estate Investors (Falcon Landing), LLC's, a limited liability company, as successor in interest to Aviva Life and Annuity Company f/k/a Amerus Life Insurance Company ("<u>Lender</u>") claims regarding the Cash Collateral and Disputed Cash Collateral.

Lender holds a first priority security interest in the Collateral, which includes, Debtor's Property, Leases, and Rents, pursuant to that certain Loan Agreement dated April 10, 2007, as amended, Deed of Trust dated April 10, 2007, as amended, and the corresponding Loan

---

[2] All references to "<u>Section</u>" herein shall be to the Bankruptcy Code appearing in Title 11 of the United States Code; all references to a "<u>Bankruptcy Rule</u>" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to LR shall refer to the Local Rules of Bankruptcy Practice of the United States District Court for the District of Nevada.

[3] Bankruptcy Rule 4001(b)(1)(B) requires the following: "The motion shall consist of or (if the motion is more than five pages in length) begin with a concise statement of the relief requested, not to exceed five pages, that lists or summarizes, and sets out the location within the relevant documents of, all material provisions, including: (i) the name of each entity with an interest in the cash collateral; (ii) the purposes for the use of the cash collateral; (iii) the material terms, including duration, of the use of the cash collateral; and (iv) any liens, cash payments, or other adequate protection that will be provided to each entity with an interest in the cash collateral or, if no additional adequate protection is proposed, an explanation of why each entity's interest is adequately protected."

[4] There is no ten-day stay of this proposed order pursuant to Bankruptcy Rule 6004(h).

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102578-002/1111475_2.doc

2

Documents identified in or pertaining to the Loan Agreement and Deed of Trust. See Cash Collateral Stipulation §§ 4-6.

Debtor cannot meet its ongoing postpetition obligations unless it has the immediate ability to use Cash on Hand, the Deposit Accounts, and Postpetition Cash. In the absence of such use, immediate and irreparable harm will result to Debtor, the estate, and creditors, and will render an effective and orderly reorganization of Debtor's business impossible. See id. at § 9; see also Omnibus Declaration ¶ 20. Debtor intends to use the Cash Collateral for ordinary operating disbursements and in accordance with the Budget attached to the Stipulation. See id. at § c.

The Cash Collateral Stipulation allows for the use of both Cash Collateral and Disputed Cash Collateral in accordance with the Budget attached to the Cash Collateral Stipulation while preserving Debtor and Lender's claims regarding the Cash Collateral and Disputed Cash Collateral. See id. at §§ 6 and 7. The Cash Collateral Stipulation allows Debtor to effectively operate and maintain its business during the Chapter 11 Case and is essential to an effective reorganization.

As part of the Cash Collateral Stipulation, Debtor provides certain acknowledgments and agreements concerning Lender's security interests in and liens on the Collateral, subject to an exception of the Disputed Cash Collateral. See id. at §§ 6-8. As and for additional adequate protection of Lender's security interests in the Cash Collateral and the Disputed Cash Collateral, the Cash Collateral Stipulation proposes that: (i) Debtor comply with certain reporting, notice, and insurance requirements; (ii) commencing April 14, 2011, and continuing on the first business day that is ten (10) business days following the end of each monthly period thereafter, Debtor tender to Lender a payment of $71,746.61; (iii) and that Lender receive the replacement liens set forth in Section h of the Stipulation. See id. §§ d, e, h, and 3.

The Cash Collateral Stipulation allows Debtor to use Cash Collateral and Disputed Cash Collateral until the earlier of: (i) ten (10) calendar days following notice to Debtor that an Event of Default has occurred and is otherwise continuing or otherwise unresolved for which notice is required to be given; (ii) an Event of Default has occurred for which no notice is required to be

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102578-002/1111475_2.doc

3

given; or (iii) the effective date of a confirmed plan of reorganization. See id. at § a. There are certain Events of Default set forth in the Cash Collateral Stipulation, including but not limited to the conversion or dismissal of the Chapter 11 Case, entry of an order appointing a Chapter 11 trustee, Debtor's filing of a motion or proceeding challenging the extent, validity, or priority of Lender's liens, Debtor's non-compliance with the Cash Collateral Stipulation, Debtor's filing of a motion seeking debtor-in-possession financing without Lender's consent, and Debtor knowingly furnishing false or inaccurate information in connection with the Cash Collateral Stipulation. See id. §§ k and l.

Entry of the Interim Cash Collateral Order would only grant Debtor's such authority until a final order is entered after notice and an opportunity for parties-in-interest to object and, if necessary, a hearing can take place pursuant to Bankruptcy Rule 6003, whereat the final hearing would grant such authority under the terms of the Cash Collateral Stipulation. However, and of upmost importance to Debtor, in the event of a termination of the Cash Collateral Stipulation, Debtor maintains the right to contest the extent of Cash Collateral and to seek to use all Cash Collateral as provided for in Section 363 of the Bankruptcy Code. See id. §§ 6 and l. Likewise, Lender retains all of its rights in this regard. See id.

## II.
## INTRODUCTION

1. On January 14, 2011 (the "Petition Date"), Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy case (the "Chapter 11 Case"). See docket no. 1.

2. Debtor continues to operate its business and manage its property as debtors and debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. See generally docket.

3. No request has been made for the appointment of a trustee or examiner, and no official committees have yet been established in these case. See generally id.

. . .

. . .

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102578-002/1111475_2.doc

4

## III.
## JURISDICTION AND VENUE

4.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1134. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (D), and (M).

5.   The basis for the relief sought herein are Sections 361 and 363 of the Bankruptcy Code, Bankruptcy Rules 4001(b) and 6003, and LR 4001(b) and (e).

6.   Venue of Debtor's Chapter 11 cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## IV.
## PERTINENT FACTS

A.   **Debtor's Operations.**

7.   As more fully discussed in the Omnibus Declaration,[5] Debtor owns and operates the 198-unit resort style apartment complex known as Falcon Landing, which is located at 5067 Madre Mesa Drive in Las Vegas, Nevada (the "Property"). Falcon Landing offers four floor plans: (i) the Cirrus, which is a 633 sq. ft., 1 bedroom, and 1 bathroom apartment; (ii) the Chancellor, which is a 748 sq. ft., 1 bedroom, and 1 bathroom, with a loft apartment; (iii) the Pilatus, which is a 1,081 sq. ft., 2 bedrooms, and 2 bathrooms apartment; and (iv) the Piaggio, which is a 1,074 sq. ft., 2 bedrooms, and 2 bathrooms, with a loft apartment. See Omnibus Declaration ¶ 4.

8.   Falcon Landing offers tenants a gated resort style living community, with: (i) an elegant clubhouse complete with furniture, a flat screen television, a wet bar, and vending; (ii) wi-fi surrounding the club house; (iii) bbq areas; (iv) a dog park; (v) garages, RV and boat parking; and (vi) a resort style pool area with a heated pool with a waterfall, a spa, showers, and vending. See id. ¶ 5.

. . .

---

[5] The factual background and events leading up to the filing of this Bankruptcy Case are set forth in the Omnibus Declaration filed contemporaneously herewith. For brevity, the facts set forth in the Omnibus Declaration have not been repeated in their entirety herein; rather, such facts are incorporated herein in their entirety by this reference.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102578-002/1111475_2.doc

5

**B.      Debtor's Secured Obligations To Lender.**

9.      Construction of Falcon Landing commenced in 2007 at the onset of the economic recession, and was completed in 2009. Falcon Landing began leasing its units in or about November of 2008, and despite the dire economic climate, on the Petition Date, 87% of Falcon Landing's units were leased. See id. ¶ 6.

10.     In order to finance the construction of Falcon Landing, on or about April 10, 2007, Debtor entered into a Construction Loan Agreement (the "Loan Agreement") with Lender, thereby authorizing Debtor to borrow up to $20 million (the "Loan").[6] The Loan is evidenced by that certain Secured Promissory Note (the "Note") dated April 12, 2007, in favor of Lender in the principal sum of $20 million, together with accruing interest.[7] See id. ¶ 7.

11.     The obligations due and owing under the Note are secured in part by that certain Construction Deed of Trust, Security Agreement and Assignment of Rents made by Debtor in favor of Lender (the "Deed of Trust"), dated April 10, 2007 and recorded on April 12, 2007 in Book 20070412 as Document No. 0003485 of the Office of the County Recorder of Clark County, Nevada, thereby granting Lender, as more fully set forth in the Deed of Trust, a first lien upon the real property upon Falcon Landing is located, as well as all of the improvements constructed thereon (the "Encumbered Real Property"). See id. ¶ 8.

12.     The obligations due and owing under the Note are further secured by that certain Assignment of Leases and Rents dated April 10, 2007 and recorded on April 12, 2007 in Book 20070412 as Document No. 0003486 of the Office of the County Recorder of Clark County,

---

[6] The Loan Agreement, Note, Deed of Trust, Assignment, Escrow Security Agreement, Financing Statement, Loan Modification Agreement, First Deed of Trust Modification, and Second Deed of Trust Modification (all as defined herein) are attached as exhibits to the Stipulation Authorizing Use Of Cash Collateral And Granting Adequate Protection, which has been filed contemporaneously herewith.

[7] The second paragraph of Section 1 of the Note provides in relevant part that: "Beginning on the Closing Date [, which was April 12, 2007,], interest shall accrue on the amount of the principal balance outstanding hereunder from time to time at the rate of six and twelve one-hundredths percent (6.12%) per annum ('Interest Rate') and shall be paid on the first day of each calendar month from and after the date hereof." The third paragraph of Section 1 of the Note further provides in relevant part that: "Beginning on April 1, 2009, principal and interest shall be due and payable in installments of One Hundred Twenty-one Thousand Four Hundred Fifty-seven and 45/100 ($121,457.45), with an installment in a like amount due and payable on the same day of each month thereafter continuing to and including March 1, 2012." As discussed more fully herein, the Note further authorizes Lender to either declare the Note due and payable or to adjust the per annum interest rate.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102578-002/1111475_2.doc

Nevada (the "Assignment"). The Assignment provides, as more fully set forth therein, that Debtor absolutely and directly assigns,[8] bargains, sells, transfers, conveys, sets over, and delivers to Lender all of its rights under the: (i) leases, license agreements, and concession agreements set forth on the certified rent roll previously provided by Debtor to Lender, and (ii) all other leases, tenancies, rental agreements, license agreements, concession agreements, subleases, and guarantees of the performance or obligation of any tenants thereunder affecting the Property (collectively, the "Leases"), as well as all amendments, extensions, and renewals thereof, together with all rents, other income, or payments (the "Rents") that become due and owing under such Leases or on account of a use of the Property. In addition, the Deed of Trust grants Lender a first priority lien and security interest in personal property owned by Debtor used or useful in the operation of the Property, all renewals or replacements of such personal property and all proceeds thereof (collectively, the "Encumbered Personal Property," and together with the Encumbered Real Property, the "Collateral"). See id. ¶ 9.

13. On April 10, 2007, Lender filed a UCC-1 financing statement, document number 2007012405-8, with the Nevada Secretary of State (the "Financing Statement"). See id. ¶ 10.

14. Debtor's obligations under the Loan Agreement are guaranteed by Scott Keller, Karen Keller, Cindy Talbott, Leroy D. Wilder, The Leroy and Nancy Wilder Trust, and me (collectively, the "Guarantors," and the documents effectuating the guarantees, the "Guarantees"). See id. ¶ 11.

15. As a result of the economy's impact on Debtor's revenues and its ability to refinance and/or service its debts, as well as the dramatic reduction in market interest rates, on or about December 22, 2009, Lender and Debtor entered into that certain Loan Modification Agreement with an effective date of July 1, 2009, whereby certain terms of the Loan Agreement, Deed of Trust, Escrow Agreement, Note, and Guarantees were modified, including but not

---

[8] Debtor contends and reserves all rights to assert that pursuant to Chapter 107A of the Nevada Revised Statutes, the alleged absolute assignment of all Leases and Rents solely provides a security interest to Lender and not the enhanced rights that an absolute assignment would have compelled.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102578-002/1111475_2.doc

7

1  limited to the Loan repayment terms. Specifically, the third paragraph of Section 1 of the Note,
2  which is quoted in relevant part herein in footnote 7, was replaced with the following:

> Beginning on April 1, 2009, principal and interest shall be due and payable in installments of One Hundred Twenty-one Thousand Four Hundred Fifty-seven and 45/100 Dollars ($121,457.45) continuing to and including the June 1, 2009 payment. On July 1, 2009 continuing to and including the July 1, 2010 payment, interest only payments shall be due and payable in equal, consecutive installments of One Hundred One Thousand Six Hundred Seventy-two and 83/100 Dollars ($101,672.83). Beginning on July 1, 2010, principal and interest will be due and payable in installments of One Hundred Twenty-one Thousand Four Hundred Fifty-seven and 45/100 Dollars ($121,457.45), with an installment in a like amount due and payable on the same day of each month thereafter continuing to and including March 1, 2012. Lender shall have the right to declare this Note to be due and payable in full on the Call Date or to adjust the per annum interest rate on the Rate Adjustment Date to an interest rate established by Lender ('Adjusted Interest Rate') as herein provided. In the event Lender elects to declare this Note to be due and payable, this Note shall become due and payable, in full, without a Make Whole Premium on March 1, 2012 ('Call Date'). In the event Lender elects to adjust the interest rate, then on March 1, 2012 ('Rate Adjustment Date') the per annum interest rate shall be adjusted to the Adjusted Interest Rate and commencing on April 1, 2012, monthly installments of principal and interest shall be due and payable in an amount determined by amortizing the then principal balance of this Note over a 27-year term at the Adjusted Interest Rate, and a like amount shall be due and payable on the same day of each month thereafter until said principal and interest shall be paid, except that all remaining principal and interest to the date of payment shall be due and payable on April 1, 2017 or such earlier date resulting from acceleration of the Indebtedness by Lender ('Maturity Date').

See id. ¶ 12.

16.     Concurrently therewith, Debtor also executed that certain Modification of Construction Deed of Trust, Security Agreement and Assignment of Rents (the "<u>First Deed of Trust Modification</u>") dated December 21, 2009 with an effective date of July 1, 2009 and recorded on December 21, 2009 as Instrument No. 200912310001740 in the Office of the County Recorder of the Clark County, Nevada. See id. ¶ 13.

17.     Thereafter, Lender and Debtor further confirmed certain terms of the Deed of Trust through the Confirmation and Modification Agreement (the "<u>Second Deed of Trust Modification</u>," and together with the Deed of Trust and the First Deed of Trust Modification, the "<u>Modified Deed of Trust</u>") dated and recorded on February 4, 2010 as Instrument No. 201002040003073 in the Office of the County Recorder of Clark County, Nevada, including

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102578-002/1111475_2.doc

8

that: (1) the interest rate from the Loan Conversion Date through the maturity date is 6.12%; and (2) subject to the terms and conditions of Lender's Election Notice, Rate Set Deadline, Call Date, and Rate Adjustment Date previously discussed herein, the Loan maturity date under the Note and Modified Deed of Trust is April 1, 2017. See id. ¶ 14.

18. As of the Petition Date, Debtor's principal obligation outstanding under the Note was $19,935,848.74 on account of principal, and $755,768.04 on account of contract interest.[9] See id. ¶ 15.

19. Debtor's revenue is derived primarily from the leasing of its apartment units. In 2010, Debtor generated gross revenue of approximately $2,052,000 See id. ¶ 16.

20. Debtor is cash-flow positive prior to debt-service. For the period of January 1, 2010 through December 31, 2010, Debtor's revenues exceeded its operating expenses, leaving more that $914,000 in net revenue before debt service. See id. ¶ 17.

21. Moreover, for the three-month period of the Petition Date through March 31, 2011, Debtor has proposed a budget that anticipates generating revenue in the approximate aggregate sum of $203,877 after payment of all operating expenses. See id. ¶ 18.

22. On the Petition Date, Debtor had cash and cash equivalents located on the Property and/or in its various bank accounts in the approximate sum of $86,420, as well as an additional approximate $2,100 held in its ATM and Falcon ATM Account. None of these sums were under Lender's control. See id. ¶ 19.

## V.
## RELIEF REQUESTED

Debtor has an emergency need for use of the Cash Collateral and Disputed Cash Collateral in accordance with the Budget attached to the Cash Collateral Stipulation, and requests Court authorization on an emergency interim basis for such use in order to avert an immediate closure of its business, which requires use of all such Cash Collateral and Disputed Cash Collateral for operations. The Budget was formulated after review of Debtor's normal and

---

[9] Additional accrued and unpaid default interest, fees, costs, and expenses that may be asserted by Lender are not included in the foregoing figures as they are subject to dispute.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102578-002/1111475_2.doc

ordinary course cash needs in the operation of its business and has Lender's approval. See Omnibus Declaration ¶ 20.

Debtor and Lender negotiated the Cash Collateral Stipulation at arms' length and in good faith. The Cash Collateral Stipulation is in the best interests of Debtor and its estate. See id. ¶ 22. As of the Petition Date, Debtor believes that the value of its business will not diminish provided Debtor's business continues to operate in the ordinary course and the expenditure of capital expenditures as proposed in the Budget and present management remain in place. See id. ¶ 24.

## VI.
## LEGAL ARGUMENT

Section 363(c) provides that "[t]he trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

The term "cash collateral" is defined in Section 363(a) as including the following:

> [C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552 (b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

If, pursuant to Section 363(c)(2)(A), an entity with an interest in cash collateral consents to that collateral's use, sale or lease, a debtor-in-possession may still be required to provide adequate protection to an entity with an interest in the cash collateral. Section 363(e) provides, in pertinent part, as follows:

> (e)    Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court,

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102578-002/1111475_2.doc

10

with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. . . .

11 U.S.C. § 363(e).

As applied to the case at hand, Lender is the only party with a properly perfected security interest in Cash Collateral and Disputed Cash Collateral (to the extent determined to be Cash Collateral), and Lender consents to Debtor's use thereof, subject to the terms and conditions set forth in the Stipulation. Moreover, Debtor's immediate use of Cash Collateral and Disputed Cash Collateral is essential to its ongoing operations and ability to reorganize. See Omnibus Declaration ¶ 22.

An integral aspect of maintaining Debtor's relationships and its business operations is Debtor's ability to use Cash Collateral and Disputed Cash Collateral to maintain a sufficient level of working capital in order to pay ordinary course obligations such as those to its employees, vendors, and taxing authorities, and to pay for necessary ordinary course property maintenance and projects. See id. ¶ 25.

The Cash Collateral Stipulation allows for the use of both Cash Collateral and Disputed Cash Collateral in accordance with the Budget attached to the Cash Collateral Stipulation while preserving Debtor and Lender's claims regarding the Cash Collateral and Disputed Cash Collateral. The Cash Collateral Stipulation allows Debtor to effectively operate and maintain its business during the Chapter 11 Case and is essential to an effective reorganization. See id. ¶ 23.

Debtor has an emergency need for use of the Cash Collateral and Disputed Cash Collateral since Debtor's business is operating, employees are working, and goods and services are being provided. As such, the Court can and should grant Debtor the authority and approval to enter into the Cash Collateral Stipulation, first on an interim and emergency basis, and after further notice and, if necessary, a hearing, on a final basis.

## VII.
## CONCLUSION

WHEREFORE, Debtor respectfully requests that Court enter an order substantially in the form attached hereto as Exhibit 1, thereby granting emergency interim approval of the Cash

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102578-002/1111475_2.doc

11

Collateral Stipulation pursuant to Bankruptcy Rule 4001(b), and scheduling a final hearing for approval of the Cash Collateral Stipulation at least twenty-one (21) days hereafter should an opposition to the Motion be filed. Debtor also requests such other relief as is just and proper.

DATED this 17th day of January, 2011.

GORDON SILVER

By: _____
GERALD M. GORDON, ESQ.
TALITHA B. GRAY, ESQ.
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
[Proposed] Attorneys for TAWK Development, LLC

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102578-002/1111475_2.doc

12